v. Elizabeth McMasters. Hear ye, hear ye, this Honorable Appellate Court for the Second District is now open. The Honorable Justice Robert D. McLaren presiding, along with Justices Anne B. Jorgensen and Mary S. Shostak. The case is number 220-538, Kinney Presberry, Plaintiff Appellant, v. Elizabeth McMasters, Defendant Appellee. Arguing for the Appellant, Brad Skafish. Arguing for the Appellee, John T. Shriver. Thank you. Mr. Skafish, you may proceed. Thank you. May it please the Court, Counsel, good morning everyone. We have here a case where the Plaintiff has brought suit under the Childhood Sexual Abuse Statute, alleging an ongoing course of abuse that went before and after her 18th birthday in both Cook and DuPage County. As the Court knows, the Cook County Court granted a motion to transfer venue, as well as awarding sanctions, and the DuPage Court ultimately missed the count pursuant to the statute of limitations. Some keys that I want to bring up early, because I think they bear on all of the aspects of this appeal, are that while the Plaintiff always knew and recalled that sexual contact had occurred, she did not recognize that contact as something abusive or wrong, and did not recognize that she had been harmed by that contact until the therapy session in June of 2018. There is an important distinction there, and in some ways I think we'll see that it doesn't fit neatly into the box that is sometimes used in the idea of repression. Often repression is used in reference to something where as a defense mechanism, the victim completely blocks the fact that something happened whatsoever out of their mind, and then only is able to regain that memory later. I think there's enough in the record to show that's not exactly what happened here, and that's not our position. But repression is not necessarily the wrong way to look at it either, because what we have here is somebody who knows that certain things happened, but doesn't come to see the reality of them until a much later point in time. I'll focus first on the dismissal of the complaint in the DuPage County Court. The reason this case survives, and the reason the court aired, essentially comes down to the discovery. It's built into the era of the statute that is applicable to this case, the 1994 statute. On the issue of the keys I talked about earlier, why wasn't Kenny Press very aware that she had been abused? You really need to focus on the power that a psychiatrist has over the victim. These were juveniles confined to a juvenile detention center, required to meet with a psychiatrist. A psychiatrist is the very person that should help them get in touch with their feelings, the mental side of their life, what urges they have, and how things have affected them. Therefore, it's the very person who has the ability to recast things going on in their life as normal or abnormal, as healthy or unhealthy, and in this case, as romantic instead of sexual abuse. As we know, this is a case of a female therapist and a female victim. While in many cases, I would say the same-sex nature probably would be irrelevant, I think there is some relevance here. We have a young woman still coming to grips with her own sexuality, and an adult woman normalizing behavior, suggesting that this is a normal, healthy blossoming of a sexual life for an adolescent lesbian, instead of instilling in her the sense that sexual contact between a grown woman and a 17-year-old is wrong in all accounts. Not only is it wrong normally, it's wrong especially here, given the power dynamic between a psychiatrist that the victim had to continue seeing and a juvenile confined to a juvenile detention center. As we've argued, what was explained and manipulated to the victim as something romantic and normal and healthy and a good part of life was very hard to deconstruct into the reality that this was abusive behavior, which had caused a lot of the problems that had happened over the intervening years. We're a hot court. We've read the record. We've done our research. Right now, we're more concerned with you establishing that there was a reversible error, and I think that relates to whether or not your client was aware of the injury at the time she turned 18 or whether she discovered it sometime later. Would you address that issue, please? Absolutely. She was absolutely not aware of the injury at the time. At the time she was 18, she thought she was having a healthy, young first relationship, and the abuse continued after that point. What she still saw as something normal and healthy and a happy part of her life. How long after she turned 18 did that relationship continue? It ended before she turned 19, so it was less than a year after her 18th birthday that it continued. Remember, by the time that she unpacked this in 2018, she was some 41 years old and in therapy, obviously still having issues from what had gone on then. Some of the cases that I think we need to look at, the Flavius versus Kuehl case that is cited by the defense and was cited by the trial court, it's very much distinguishable from what the scenario is that we have here. One, it was a different version of the statute, the 1991 statute. In that case, they tried to proceed on the idea of repression, but it was shown that the plaintiff in that case had some awareness, not only of the abuse, but of the fact that she had been injured. She just didn't have awareness of the full extent of the injury that she had suffered. Here, there was no awareness of the injury whatsoever. There was not an acknowledgment that what had happened was something that had harmed the plaintiff until she had this therapy session in June of 2018. There was also the Parks case that the court focused on. In that case, the victim had been raped by a priest when they were young and had been essentially threatened not to do anything about it. And the evidence that was produced in the case was that the person was always aware that they had been harmed and always aware that it had happened and only held off because of the threats that they had been victim of. And the court found that even taking into account something like the discovery rule, it just didn't survive the statute. We've had the issue that was brought up in the trial court and cited in the briefs about whether the court can impute knowledge of wrongfulness just simply due to a person turning 18. We find this wrong both on a legal and just a moral, humanistic ground. The Clay or Softcheck rule suggests that perhaps when somebody turns 18, they know that sex between an adult and a minor is wrong. There's also the Horn case which we cited that suggests that rule is not applicable if the memories are blocked. And as I said earlier in trying to give some introductory comments, it gets a little confusing in this case because it doesn't fit neatly into the idea of, well, were those memories blocked in a sense of repression? Where 10 years ago, was she aware that she had contact with Dr. McMasters? Yes, she was. But she was still under the mindset that what had happened was an early relationship in her life and what had happened was healthy and good for her. And again, it comes down to the fact that the person who put those memories in her, the person involved with her, is her mental health therapist, is a psychiatrist. Let's talk about this oral contract case. The victim, it's from reading your briefs, and the case is that not until three or four months after she entered into the oral contract case, she realized that this conduct had caused her harm. How is it then she knows enough to enter into this oral contract case thinking that something wasn't quite right, but she doesn't realize until after that that there was harm? Sure. And I understand the court bringing that up. For the record, I mean, our main response to that is under Rule 366A.3, we don't believe it was even proper for the appellee to bring up the other oral contract. It's not a supplementation of the appeal of the appellate record after the appeal is commenced that was allowed because it's not to correct an error or add something that should have been included. They make the argument on the legal theory of collateral estoppel. However, none of the grounds of collateral estoppel are actually triggered. It's specifically, and most importantly- Even regardless of collateral estoppel, doesn't it go to show her knowledge at the time? I would say it doesn't, Your Honor. And here's why I know you're asking me to get to the substance, and I promise you I will. Part of the reason I'm bringing up the procedure is there are reasons for procedural protections. That second complaint hasn't had the time to be fleshed out the way there has already been litigation on this. I think taking the simple allegations of that second complaint, which right now is subject to a motion to dismiss that has been briefed but not heard, it misses some of the underpinnings of that. All that is before the court, even assuming we take into account that oral contract complaint, is that it's alleged that some two or three months earlier there was entry into an oral complaint. There are many explanations for that. It would not get to a suggestion that there is something irreconcilable or wrong here. A simple one could be that she was wrong in the estimate of when the oral contract began. It says in approximately, I think it was April or May or February or March, and we're two or three months early. At the time that she had that recollection, she may have been off by a couple of months. There may have been a Scribner's error in terms of the drafting of the other complaint. And I know I'm saying may have been, but again, this is something that hasn't been teased out. There's also the issue if you take everything to be perfectly accurate there and here. The fact that Dr. McMaster's wants to start paying off the victim of her own sexual abuse, which is certainly damaging to Dr. McMaster's own career if it becomes public, could certainly occur even if the plaintiff herself does not view herself to have been harmed. And she still thinks of this as if we had a relationship some decades ago. I guess if you're going to start giving me money, that's fine. And I don't I don't really think it harmed me. I didn't think it was abusive. But maybe Dr. McMaster's was fully aware that she could lose her medical accreditation or that at some point the plaintiff would come to realize that what happened was not normal and was abusive, which is exactly what happened a few months later in therapy. So I think there are numerous, numerous explanations, and that's part of why the procedural aspect matters, too, because since none of that has had an opportunity to be unpacked and it's brought before this court in what we find to be a procedurally improper way. I think it just leads us down a path that's inappropriate for the purposes of this appeal. The allegations are taken as true. And I don't think we get to this supposed collateral information that would lead anybody to reexamine it for different reasons. Let's talk about the transfer of venue. Absolutely. The transfer of venue. In some ways, this is an issue of first impression. We have what has been alleged to be a continuing course of abuse starting before age 18 and continuing after it starting into page. I'm starting to page and continuing into cook. One thing we think the court missed focus on entirely was the fact that Dr. McMaster's did practice medicine in Cook County. Therefore, making venue appropriate for the earlier acts, even before the plaintiff turned 18, even though they occurred in Cage County, as the venue would be proper for both with defendant where the incidents occurred and where the defendant resided. And then, who has a principal place of business in one place. The defendant resides in McHenry County I assume that was stipulated to. Well, but she also regularly practice business in Cook County and that wasn't controverted by anything. So I think residents can be proper in both counties on that basis. And as you'll see in the record, very little attention was given to that. Almost all the focus of the court seemed to come back to where the abuse occurred, forcing us to focus on that issue as well. That's where I say I think this is a bit of an issue of first impression, because Illinois courts really haven't weighed in on whether a continuous ongoing course of abuse that starts before the 18th birthday that continues after fall under the childhood sexual abuse statute. That is something that the California court that we decided to teach case found that that is appropriate that any other interpretation of the statute that childhood abuse statute of course it's a different statute it's in a different state, but that that that interpretation only made sense with what it was that the victim had undergone. We cited the Taylor case in Northern District, which I'll concede is slightly different on the issue, but it did have to do with whether the court could consider one ongoing continuous course of sexual abuse to be one thing instead of disparate events of sexual abuse that occurred at various points and were each subject to their own statute. At what point did the doctor's treatment, if you will, of the plaintiff, at what point did that end? Also, I believe between roughly age 18 and 19. I mean, as we've shown in the record that when the plaintiff turned age 18, she did not suddenly become a free and independent adult. She went from a confinee of the juvenile detention center to a ward of the state living in a group home in a different county, continuing to see in a professional capacity the same psychiatrist. That lasted until sometime within the next year, and both the professional relationship and the sexual relationship ended around that time. So both relationships ended around the same time? Right. Both sexual and professional. Correct. So, we do think that there is a good fit. Mr. Skafish, your time is up. Are there any other questions from the panel? No, I don't have any other questions. Mary, you're on mute. Can I make just one final comment to tie up what I was... Sure. The ancillary... Mary, do you have any other questions? I have no other questions. You may close, Mr. Skafish. Thank you. Ancillary to the issue of the transfer would be the sanctions that were kind of premised on the transfer. And as we've said, I think not only do we think there are grounds that the transfer should not have been granted in the first place, at the very, very least, there was a good faith basis for bringing the case in Cook County. And as attorneys trying to do the best job we can for our client, we have a duty of zealous advocacy. And I believe that when attorneys end up having their clients or their firm sanctioned by thousands of dollars for trying to do the best job they can for their clients, where there is a good faith basis for advancing a theory, all that's going to have in the future is the chilling effect where people perhaps have to rein in what they feel is appropriate zealous advocacy for fear of monetary sanctions. So, you know, that's secondary importance to the substantive issues here, but I think that falls for the same reason that the transfer itself. Thank you. Thank you. Mr. Schreiber, you may proceed. Thank you, Judge McLaren. I think I've listened intently to what Mr. Schaefer said, and let's just talk first about the venue which I think is fairly clear cut here. This is not a case of first impression. The Illinois venue statute is very clear. 5-2-201 says you bring an action where the defendant resides, the county in which the defendant resides, which was McHenry County in this case, or where the cause of action occurred, where the events leading up to the cause of action took place. Are you submitting that there was no sexual abuse in Cook County at all? Yes, that's exactly correct. Okay, go ahead. I'm sorry. The only allegation in this complaint, in the initial complaint and in the amended complaint, arose under the Childhood Sexual Abuse Act, which by its terms says it must occur before the plaintiff turned 18. She was incarcerated or award, however you want to phrase it, in DuPage County until she was 18, past her 18th birthday. Consequently, the entire action that is alleged, which we deny, by the way, and Dr. McMaster's vehemently denied it, took place, if at all, in DuPage County. And when we brought that to the attention of Plaintiff's Counsel before he filed, he said, I don't care. I'm filing where I want. That's not in the record, so we're not going to talk about what's not in the record, Mr. Shriver. One other question. Did she have a practice in Cook County? She did have a practice in Cook County, yes. But the venue statute doesn't speak to where you have a practice. It speaks to where you reside or where the cause of action arose. And with all due respect, Your Honor, the statement I made is in the record. It's part of the record before the Cook County Court. We submitted an affidavit to that effect, and I believe that was the basis for the sanction that was awarded. So those are my comments on the venue issue. As I say, I don't see this at all as a matter of first impression. But since you're talking about venue, let's go to sanctions before you go to the underlying offense. Are sanctions appropriate in this case, or as Mr. Stafish suggested, do they put a chilling effect on attorneys in filing lawsuits in what they believe to be the proper venue? The distinction, I think, that the Circuit Court of Cook County made was that there is no basis for this case to be in Cook County. It's not a matter of relying on what opposing counsel or other counsel may say. It's what the statute says. And when you respond to the suggestion or the statement, it doesn't belong in Cook County, that I don't care, that indicates a total disregard for the statute. And that was the basis for the judge's award of sanctions. I think under the abuse of discretion standard, certainly, that should be sustained here. I have an additional question, counsel. Your opposing counsel seems to be urging us to extend the statute such that if there is a continuous course of sexual abuse, that AIDS is not a barrier. Why should we not consider that? Because the Childhood Sexual Abuse Act dictates that the cause of action ceases upon the 18th birthday of the plaintiff. Childhood sexual abuse is so defined. There is no claim in this case of any cause of action relating to Ms. Presberry after she turned 18. May I proceed then? Yes, sir. Okay. With respect to the substance of the complaint and the amended complaint, the critical fact here, the critical allegation here, is that the plaintiff knew at all times that the sexual activity was ongoing. She knew at all times of the abuse, which she now claims 22 years later, caused her injury. When we look at the Clay case of our Supreme Court, the statement is very clear. Illinois law presumes an intent to harm and resulting injury from the type of misconduct alleged in that case by Mr. Kuhn, but in this case, by the psychiatrist. Now, that's what the Clay case stands for. Months later, the Illinois Supreme Court in the Parks case was even more specific with respect to the failure of that plaintiff to allege a cause of action, which is why we're here today. In the Parks case, the court said, and I quote, when a plaintiff alleging childhood sexual abuse was aware of the abuse as it occurred and does not allege that she repressed the memories of that abuse, the limitations period begins to run at the time the plaintiff reaches the age of majority. That's exactly what we have here. And is this how you would distinguish the Horn case that the plaintiff relies on? Well, the Horn case stands for two propositions that I think are important here. Number one, Mr. Horn claimed in his complaint that he had no memory of the abuse. He totally blocked everything out of his mind until years later. That's not what we have here. The second point in Horn, which I think is appropriate here, is that the court found that sexual activity with a minor is the same thing as sexual abuse. You can't say I was aware of having sex with a minor, but it wasn't abuse because the two things equate. And that's what Horn stands for. And I'd also reference the case of M.E.H. versus L.H. by this court back in 1996. I think this court went even a step further and said in its conclusion, we do not believe the discovery rule applies in cases such as the one at Barr where a plaintiff alleges repressed conscious awareness of sexual abuse as a child and remembers it years later. Well, we don't we don't even have to get there because she admits, Pressbury admits, she knew of the sexual activity as it was ongoing all the time. And yet, 22 years later, she comes and files this this claim of childhood sexual abuse. But he's claiming she did not realize at the time of the child sexual abuse that it was indeed sexual abuse. Correct. Isn't that what he's saying? That's what he's saying now. That's not what the allegation in the amended complaint is, however. And I'm saying the Horn case equates the two, so it makes no difference. But he didn't say that in his briefs that that wasn't said in his briefs. I'm not going to be able to cite his brief. I don't have it on the top of my head. I'm looking at the complaint and the allegation in the complaint. And the final point I would make to your your honors. This after file complaint, which you can and should take judicial notice of. And any number of cases allow you to do so. Totally destroys this concept that they allege in their amended complaint that suddenly there was a relevation through therapy. That there was injury from this abuse. Take a look at that complaint that was later filed. And it says I agreed to keep quiet about the abuse. And it also says I was injured by the abuse in a payment in exchange for a payment of money. Now, that doesn't say when she became aware of the injury or the abuse. It simply says I agree to be quiet in exchange for money because of it. Obviously, her awareness predated the date of the so-called oral contract. It puts a lie to the entire allegation in the amended complaint of some relevations from therapy all these years later. That's all I have to say. Mr. Shriver, are you done with your oral argument or was only in so far as that particular point? No, unless there's any questions from the court, I think that's covered what I need to. Does anyone have any questions? Yes, I do, Justice McLaren. So that I understand your argument correctly. You agree that harm is an element of this offense. But you're suggesting that the conduct itself is the harm. And if you are aware of the conduct, you are inherently aware of the harm. I believe the Horne case says that if you're aware of the conduct, that is tantamount to abuse when the conduct was between a child and an adult. Right, so my question is, is that your position? Yes, ma'am, it is. Mary? Mr. Skafish submits that perhaps the reason that the victim still didn't really know that the sexual abuse was what caused her harm. And that the reason that your client entered in this contract was to protect her license. What do you say with respect to that? I say the allegation is untrue. I say that the allegation does not afford this plaintiff the opportunity to now say before this court that there was some relevation through therapy months and months later. I'm saying the two allegations are totally inconsistent. They're incongruent, and they're not true. That's what I'm saying. Thank you. Thank you, sir. Yes, sir. Mr. Skafish, you have five minutes for rebuttal. Thank you. Starting with counsel's comments on his interpretation of the Horne case and its proposition that the awareness of sexual contact between a minor and adult is the same thing as abuse. One, I think that is a narrow interpretation based on how one case... But isn't the Horne case repressed knowledge of the sexual abuse? You're not submitting that that's the case here, are you? Right. I think that that is one of the major differences, Your Honor. Yes, and we agree. I'll talk about two things. One of the others is the MEH case where this court had held that in cases of repression, maybe the discovery rule doesn't apply. Now, with all due respect to this court, I would still find that inconsistent with the discovery rule built into the statute. But I don't think it matters in this particular case because we're not talking about a case where she knew she was abused and harmed. And out of the extreme pain that she had undergone as a minor, she repressed that and didn't have any recollection that it ever happened again until some point in adulthood. That's not what we have here. What we have is unawareness of it being abuse and unawareness of harm, not repression of the memory. I don't think those particular precedents even really apply here. But on the idea, just the concept that awareness, that you turn 18 and you're suddenly aware that any sexual contact between an adult and a minor has to be abusive. I think it just kind of boggles my mind that that could be arguably true. It doesn't need to be abusive if you have a contact between a minor and an adult. I mean, that's against the law, correct? In most cases, but even that, I mean, against the law, it doesn't equate to morally wrong or harmful to the particular victim. But even those things have exceptions. There are legitimate romantic relationships between an 18-year-old and a 17-year-old where there's kind of an acknowledged exception because they're in the same age range. But there is a dramatic difference between that, where it's a 17-year-old juvenile detention confining and an adult doctor who's placed in a position of trust to try to help her with her psychiatry. Is it your position that she repressed this harm or that she never understood it to repress it in the first place? That she never understood it. And here's, again, where I've said a couple of times, I know it doesn't fit in a neat little box, but she did not understand it to be harmful, which might happen in a number of scenarios where somebody as a minor is abused by an adult. But here it's particularly unusual because the person doing it is the same person who is in a position of telling them how to deal with their feelings, what is right and what is wrong. Any normal 17-year-old seeing a psychiatrist who is not an abuser... Hold on, counsel. So your client remembers all about this relationship and all of the things that the psychiatrist was trying to flesh out with her but didn't appreciate that this was harm? I would disagree with your first statement in a sense to say that she remembers all of it. Her recollections... You just said she remembers the relationship and that this person was in a position of authority over her, but yet she doesn't remember the harm. Well, she didn't remember every detail of it and may still not to this day remember every detail. And I'm not talking about in a repression sense, but simply the passage of 25 years. However, at the time it was going on, she thought this was a person who cared for her and was engaging in a positive adult relationship with her as opposed to somebody who would manipulate her for highly inappropriate means for an adult in a power position to have a sexual relationship with a child. Just a couple of final things. I know my time is running out. One of the first things that counsel was asked was, you know, do you contend that there was no abuse alleged in Cook County? Counsel answered that that's right. There was none. I think he even acknowledged that it is alleged that there was sexual abuse in Cook County. It's what happened after age 18, which under our theory of the continuous tort would still come on into play under the statute. Counsel did acknowledge that the defendant had a practice in Cook County. So I think you can find that there was venue is proper based on all of that with short circuits, all of the rest of everything happened because that any motion should have never been granted. What do you say about his indicating that on the record? You said he said you don't have venue and you said, I don't care. And if that was the basis for the sanctions, do you agree with that? Right. And I wanted to get to that. What was said in the I don't care comment was in response to defense counsel's analysis of our client's legal position before something was filed and why he might find that that statement in an informal setting to be rude or less than professional. I think it sums up the way often as a lawyer, you have to view the attitudes of the person you are making contact with and advising that you're going to sue. You treat them with a grain of salt. If I took seriously every time a potential defendant told me your case has no merit, I didn't do what you say I did. You can't sue me there. Your legal theory and your factual theory are wrong. I would have no cases. You can't always care. It doesn't be I don't care wasn't saying I don't care about the law or I don't care about the court's authority. It was I don't care about your analysis of the law and facts, because I represent my client. I'm going to do the best I can by her, not by your fault. The other questions. Nope. Very nothing further. Thank you, gentlemen. Thank you very much. Thank you. Take your case under advisement and render a disposition in time. Mr. Clerk, will you please close out the proceedings. Thank you judges for your time.